**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSE FONTANEZ, | ) | 3:22cv1168 (SVN) |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN TIMETHEA PULLEN, | ) | |
| *Respondent*. | ) | August 18, 2023 |

<u>**RULING ON MOTION TO DISMISS**</u>
<u>**PETITION FOR HABEAS CORPUS UNDER 28 U.S.C. § 2241**</u>

Petitioner Jose Fontanez is a sentenced federal inmate in custody of the Bureau of Prisons ("BOP") at FCI-Danbury.   Pet., ECF No. 1.   Petitioner has filed for a writ of habeas corpus under 28 U.S.C. § 2241 challenging an adverse disciplinary decision on grounds that the decision was made in violation of the Fifth Amendment's procedural due process guarantees (Ground One), and that the sanction imposed violated the Fifth Amendment's substantive due process guarantee and the Eighth Amendment (Ground Two).   Pet. at 1–3, 6–7, 13.   He requests an order expunging his incident report, reinstatement of all privileges, and reinstatement of good-time credit.   *Id.* at 8.

Respondent, the warden of FCI Danbury, has filed a motion to dismiss the petition for failure to state a claim.   Respondent's arguments pertain only to Ground One, and do not address Petitioner's allegations of Fifth Amendment substantive due process and Eighth Amendment violations.   Thus, the Court characterizes Respondent's motion as a partial motion to dismiss, and Ground Two for habeas relief remains pending.

Under Local Rule 7(a)2, Petitioner's response to the motion to dismiss was due by December 23, 2022.   To date, Petitioner has yet to file a response, nor has he sought an extension

1

of time to do so.[1]

For the following reasons, Respondent's motion to dismiss the petition, as it pertains to Ground One, is GRANTED IN PART and DENIED IN PART.

## I.    FACTUAL BACKGROUND

The Court recounts the following factual background as reflected in the petition, materials attached to the petition, and the disciplinary record, which is incorporated by reference in the petition.

On August 20, 2021, Petitioner was placed in the Special Housing Unit ("SHU") at FCI Fort Dix on suspicion of violating prison disciplinary rules.  Pet. at 10 ¶ 1.  Staff informed Petitioner that staff found contraband cellular telephones inside a locker fitted with false compartments in Petitioner's housing area.  *Id.*  Petitioner denied any knowledge or ownership of the phones.  *Id.*  Taking no disciplinary action at this time, staff returned Petitioner to Fort Dix Camp to resume normal activities.  *Id.*

On August 21, 2021, at 8:50 PM—more than 24 hours after the phones were discovered—staff served Petitioner with an incident report charging him with possession of a hazardous tool (i.e., the contraband cellphones).  *Id.* at 11 ¶ 4 (Petitioner's affidavit); 31 (August 21, 2021, incident report).  The incident report stated:

> On August 20, 2021 at approximately 6:41 pm I Officer E. Shutack was working as the O.I.C. officer at the Camp on the evening watch.  When searching locker A-88 wh[ich] belongs to inmate FONTANEZ, JOSE, #12350-082 I located one (1) black in color I Phone with magnets on the back of it behind locker A-88/U.  Also under the locker was a fake bottom that in the bottom back of the locker has a[n] access slot that the inmate can reach from on his bed.  When removed there was one rolled up sock that had (1) S[am]sung charger and adapter, and (1) black in color I-Phone with a magnet on the back.  As per A&O Handbook Page 40, in which all inmates receive upon entry into FCI Fort Dix, it

---

[1] Respondent complied with Local Rule 12(a) by providing Petitioner notice that his failure to respond to the motion to dismiss could result in the Court granting the motion to dismiss.  *See* Notice, ECF No. 9-3.

states all inmates are responsible to keep their areas clear and free of all contraband. Operations Lieutenant was notified.

*Id.*

This incident report was later rewritten and served on Petitioner on August 25, 2021.   *See id.* at 11 ¶ 4.   The new version contained the same information except that the new report clarified that Officer Shutack searched locker A-88 "located next to [Petitioner's] bed" and that the "access slot" was within "arms reach" from the inmate on his bed.   *Id.* at 29 (August 25, 2021, incident report).

On August 25, 2021, Special Investigation Security ("SIS") took Petitioner from the Fort Dix Camp to the SHU based on the discovery of the phones on August 21, 2021.   *Id.* at 10 ¶ 2.   Petitioner states that SIS did not inform him why he was only then, five days after discovery of the phones, being placed in the SHU.   *Id.*   Petitioner alleges he was not provided with a staff representative to assist with his defense against the incident report, and he was not advised of his rights until September 20, 2021.   *Id.*

On September 20, 2021, after he was advised of his rights, Petitioner requested, but was not provided with, a staff representative to assist him in the disciplinary process.   *Id.* at 11 ¶ 3. Petitioner explains that he refused to sign the inmate rights form because he had not been provided with a representative.   *Id.*

Petitioner remained in the SHU until his disciplinary hearing.   *Id.* at 11 ¶¶ 3, 5. Disciplinary Hearing Officer ("DHO") Darden conducted this hearing.[2]   *Id.* at 19 (DHO Report). Petitioner asserts that he provided the hearing officer a four-page written statement, explaining:

---

[2] Petitioner states that the hearing took place on October 6, 2021, ECF No. 1 at 11 ¶ 5, but Respondent, based on the DHO's report, represents that the hearing occurred on October 12, 2021, *see id.* at 16.   This discrepancy as to the hearing date does not affect this Court's consideration of the present motion to dismiss.

(1) that the locker A-88 Lower, rather an A-88 Upper where the phones were found, is his personal locker; (2) that he does not own or possess any cell phone, charger or adapter; and (3) that the items were found in a common area that was accessible to multiple inmates. *Id.* at 11 ¶ 5,  25 ¶¶ 2–3 (Petitioner's written statement).  Petitioner alleges that the DHO refused to read this written statement because it was "too long." *Id.* at 11 ¶ 5.  Despite Petitioner's handwritten submission, Darden the DHO decision stated that Petitioner did not provide any documentary evidence. *Id.*

Petitioner claims that he was denied his right to a staff representative to assist him with review of the evidence and during the hearing. *Id.* at 12 ¶ 6.  Plaintiff also asserts three general defenses to his discipline:  (1) no investigation took place to confirm Shutack's incident report; (2) no evidence was presented at his hearing; and (3) Petitioner was not permitted to present a defense at his hearing. *Id.* at ¶¶ 6–7.  He complains that the disciplinary officer took the correctional officer's statement essentially at face value; that neither the phones nor photographs of the phones were produced at the hearing (and his request to see the phones or photographs of the phones was denied by the DHO); and that no officer testified as a witness at the hearing. *Id.*

On November 3, 2021, the DHO rendered a guilty finding and imposed punitive sanctions. *Id.* at 12–13 ¶¶ 7–8; 16–19.  The DHO report indicated that Petitioner received a copy of the advisement of rights form on September 20, 2021, from Officer Eakins, that Petitioner had not waived his right to a staff representative but that no representative appeared at the hearing; that Petitioner stated he was not guilty; and that no witnesses were called. *Id.* at 16–17.  The DHO report further states that "[n]o procedural issues were cited by the inmate and no documentary evidence was provided for consideration." *Id.* at 16.  The DHO explained that he considered the

following evidence:   Officer Shutack's report about the search; a photograph depicting the two cellular phones and charging device found in Petitioner's living area; and Petitioner's statement that he was not guilty of the charges.   *Id.* at 18.

The DHO imposed sanctions including loss of 41 days' good conduct time ("GCT"), 24 days of disciplinary segregation, and loss of 359 days of phone privileges.   *Id.* at 19.   Petitioner asserts that he received the DHO report on November 3, 2021, fifteen days after his hearing.   *Id.* at 13 ¶ 8.

Both parties agree Petitioner fully exhausted his claims.

## II.    LEGAL STANDARD

### A.  Section 2241

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).   A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction."   *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).   An inmate may challenge under § 2241, for example, "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."   *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

### B.  Rule 12(b)(6)

A motion to dismiss a habeas petition, like any other motion to dismiss a civil complaint, is governed by Federal Rule of Civil Procedure 12(b)(6).   *Spiegelmann v. Erfe*, No. 3:17-CV-

2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018).   To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."   *Twombly*, 550 U.S. at 555, 557.

Because Petitioner filed the present petition *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest."   *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).   "Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility" under Rule 12(b)(6).   *Sentementes v. Gen. Elec. Co.*, No. 3:14-CV-00131-VLB, 2014 WL 2881441, at *2 (D. Conn. June 25, 2014) (cleaned up).

In considering a motion to dismiss, the court typically may consider only the complaint, or, here, the petition.   However, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition.   *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining that, in considering a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint

6

relies and which are integral to the complaint").   To that end, because the petition relies on records relating to Petitioner's disciplinary record, the Court will consider these documents, and related records submitted by Respondent, in assessing Respondent's motion.

## III.    DISCUSSION

### A.  Fifth Amendment Claim

The Due Process Clause of the Fifth Amendment provides that "no person shall be . . . deprived of life, liberty, or property, without due process of law[.]"   U.S. CONST. amend. V.   "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship."   *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).   To state a claim for relief for denial of procedural due process, Petitioner must show that he:   (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.   *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004).

While due process protections afforded a prison inmate do not equate to "the full panoply of rights due a defendant in such [criminal] proceedings," *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974), an inmate is entitled "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken," *Sira*, 380 F.3d at 69 (2d Cir. 2004).   The Second Circuit has emphasized that, in the context of disciplinary proceedings, "the *only* process

due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*."
*Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (emphasis in original).

A court's review of the DHO's written findings is limited to determining whether the DHO
disposition is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).
This standard is satisfied if there is "reliable evidence" in the record that supports the disciplinary
ruling. *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (construing "some evidence" as "reliable
evidence" of inmate's guilt). The "some evidence" standard is "extremely tolerant and is satisfied
if 'there is *any* evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69
(quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000); *see also Leyva v. Warden*,
699 F. App'x 4, 5 (2d Cir. 2017) (upholding disciplinary ruling in case involving possession of
contraband cell phones where "some evidence" standard was satisfied); *Hill*, 472 U.S. at 455 ("We
hold that the requirements of due process are satisfied if some evidence supports the decision by
the prison disciplinary board to revoke good time credits.").

Petitioner argues he was deprived of due process in several ways: (1) he was not provided
with the incident report within 24 hours of incident; (2) he was not advised of his rights until
September 20, 2021; (3) he requested but was not provided with a staff representative to assist him
with gathering and presenting evidence for his defense; (4) he was not provided with the written
DHO report within fifteen work days; (5) the DHO report was based on only the officer's report;
and (6) the BOP provided untimely resolution of his appeals. Pet. at 6–7, 11–12, 33–34 (Mem.).

Respondent does not challenge Petitioner's due process claim on grounds that Petitioner
lacks a cognizable liberty interest. Instead, Respondent argues that the disciplinary record

demonstrates that Petitioner was afforded constitutionally sufficient procedural safeguards and that the DHO's decision was supported by at least some evidence.

### 1.  Notice of Disciplinary Charge

"In a prison disciplinary proceeding, '[d]ue process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing.'"  *Elder v. McCarthy*, 967 F.3d 113, 128 (2d Cir. 2020) (quoting *Sira*, 380 F.3d at 70).  The notice must permit a "reasonable person" to "understand what conduct is at issue so that he may identify relevant evidence and present a defense."  *Id.* (quoting *Sira*, 380 F.3d at 72).[3]

Petitioner complains that he was not provided the incident report within twenty-four hours of the discovery of the contraband on August 20, 2021.  Pet. at 11 ¶ 4.  The relevant federal regulation states that prisoners "will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident."  28 C.F.R. § 541.5(a).  However, the failure to provide an inmate with incident report within twenty-four hours from the time of the alleged infraction does not on its own violate the Constitution.  *Walker v. Williams*, No. 3:16-CV-1048 (JAM), 2018 WL 264172, at *3 (D. Conn. Jan. 2, 2018) (noting that failure to provide an inmate with an incident report within 24 hours of an incident does not violate due process).  Rather, the Constitution requires only that an inmate receive notice of the alleged incident twenty-four hours in advance of the disciplinary hearing.  *Rodriguez v. Lindsay*, 498 F. App'x 70, 71–72 (2d Cir. 2012) (recognizing that the twenty-four-hour notice period "does not run from the

---

[3]  Petitioner does not challenge the notice for failure to inform him of the conduct at issue.

perpetration of the alleged incident, but rather works backward from the beginning of the disciplinary hearing relating to that incident").

Here, Petitioner received the incident report describing the disciplinary charges against him on August 21, 2021, far more than twenty-four hours in advance of his hearing in October of 2021. *See* Pet. at 11 ¶ 5, 29, 31.   Accordingly, Petitioner's claim that he received insufficient notice does not entitle him to relief.

### 2.   *Advisor Assistance*

"Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges."   *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988).   That duty of assistance is "greater" when the inmate is confined full-time in the SHU "because the inmate's ability to help himself is reduced." *Id.*   Although the Second Circuit has noted that the "assigned assistant's precise role and the contours of the assistant's obligations" are undefined, "[a]t a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." *Elder*, 967 F.3d at 126 (quoting *Eng*, 858 F.2d at 898) (alteration in original).

In both his affidavit and memorandum in support of his petition, Petitioner states that he requested but was denied a staff representative to assist with him investigating the evidence and witnesses relevant to his charges.   Pet. at 11 ¶ 3, 33.   Further, he avers that he refused to sign the inmate rights form because he was not afforded assistance.   *Id.* at 11 ¶ 3; 30 (Inmate Rights at Disciplinary Hearing form with blank inmate signature line).   Petitioner also alleges that he was found guilty without being able to present a defense because prison officials did not investigate the veracity of the allegations in the incident report.   *Id.* at 12 ¶¶ 6–7, 10.

10

Respondent argues that Petitioner waived his right to staff representation.   Respondent has submitted a copy of Notice of Discipline Hearing Before the DHO dated September 20, 2021, showing an "x" mark reflecting that Petitioner did not wish to have a staff representative at the hearing and Petitioner's signature.   ECF No. 9-1 at 9 (Notice of Hearing).   But Respondent's claim that Petitioner waived assistance is contradicted by the Discipline Hearing Officer Report, which shows an "x" marked next to "No" in response to the statement "Inmate waived right to staff representative."   *Id.* at 14; Pet. at 16.

Thus, the Court cannot determine from the four corners of the petition, including the documents comprising the disciplinary record, that Petitioner was not denied his right to advisor assistance without a valid reason.[4]   Accordingly, the motion to dismiss must be denied as to Petitioner's advisor assistance claim.

Because Petitioner's alleged due process violations arising from his right to present a defense and to have a DHO disposition based on "some reliable evidence" arise from his alleged deprivation of advisor assistance, the Court reserves its consideration of those asserted due process violations for review of a fuller evidentiary record.[5]

### 3. *Written Statement of Reasons*

Petitioner also claims that a written report was not provided to him fifteen workdays after the disciplinary hearing, allegedly in violation of due process.   Petitioner attaches a copy of 28

---

[4] Respondent has also submitted the declaration of Correctional Counselor Eakins, who avers that Petitioner signed the Inmate Rights at Discipline Hearing form on September 20, 2021.   Eakins Decl. at ¶ 4, ECF No. 9-2.   The court cannot consider documents beyond the pleadings and disciplinary record without converting the motion to dismiss into a motion for summary judgment.   *See* Fed. R. Civ. P. 12(d).   At this juncture, the Court is not inclined to convert the present motion into one for summary judgment due to the conflict presented by the disciplinary record.

[5] The disciplinary record also presents conflicting evidence concerning whether Petitioner waived his right to present witnesses.   Respondent submits the Notice of Discipline Hearing form, which shows an "x" indicating that Petitioner did not wish to have witnesses.   *See* ECF No. 9-1 at 9 (Notice of Hearing).   But the Discipline Hearing Officer Report indicates that Petitioner did not waive his right to witnesses.   *Id.* at 15; Pet. at 17.

C.F.R. § 541.8(h), which provides that the inmate "will receive a written copy of the DHO's decision following the hearing," but that regulation does not address a time for issuance of the DHO's written decision after the hearing or require that the DHO provide an inmate a copy of the written decision within a fifteen-day period.   And even if it did, noncompliance with a BOP regulation that is not also a violation of the minimal constitutional standards set forth in *Wolff* cannot offend due process.  *See Wentzel v. Pliler*, 21-CV-9245 (AT) (JLC), 2022 WL 9798257, at *6 (S.D.N.Y. Oct. 17, 2022) (citing *Rodriguez*, 498 F. App'x at 71 and additional cases).   Under *Wolff*, due process requires that the inmate receive a written statement that explains what evidence supported a disciplinary determination, *see Sira*, 380 F.3d at 74, but it does not require that the DHO issue the written statement within fifteen workdays from the hearing date.   Accordingly, Petitioner's claim that he received did not receive timely notice of the DHO's decision cannot proceed.

## IV.    CONCLUSION

For the reasons explained above, the motion to dismiss is GRANTED in part and DENIED in part.   Respondent's motion to dismiss is GRANTED as to Petitioner's claims of Fifth procedural due process violations arising from (1) his receipt of the incident report more than twenty-four hours after the incident; and (2) his receipt of the DHO written decision more than fifteen working days after the hearing.

The motion to dismiss is DENIED as to his Fifth Amendment procedural due process claims based on failure to provide him with an advisor, his right to present a defense, and his right to have a DHO disposition based on some reliable evidence.

Respondent did not argue for dismissal regarding Petitioner's claims of Fifth Amendment procedural due process violation based on the alleged delay in advising him of his rights, untimely

responses to his appeals, and Fifth Amendment substantive due process and Eighth Amendment violations.   These asserted grounds for habeas relief also remain pending.

By September 18, 2023, Respondent must answer the remaining pending claims.   *See* Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts; *id.* Rule 1(a) (making these Rules applicable to habeas corpus petitions other than those brought under Section 2254).   The Court will then decide whether to conduct an evidentiary hearing.   *See id.* Rule 8.

**SO ORDERED** at Hartford, Connecticut this 18th day of August, 2023.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

13